UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| SUMMER MIXON, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | Civil Action No.: |
| v. | ) ) ) | REMOVED FROM: Court of Common Pleas County of |
| CARESOUTH CAROLINA, INC., | ) ) | Darlington, Case No. 2021CP1600887 |
| *Defendant.* | ) ) ) | |

**DEFENDANT CARESOUTH CAROLINA, INC.'s
NOTICE OF REMOVAL**

## I.    INTRODUCTION

Pursuant to 42 U.S.C. § 233(*l*)(2), 28 U.S.C. § 1442, 28 U.S.C. § 2679(d), and 28 U.S.C. § 1331, and on the grounds set forth below, defendant CareSouth Carolina, Inc. (hereinafter "CareSouth"), hereby removes to this Court the civil action of Plaintiff Summer Mixon*, entitled Summer Mixon, individually and on behalf of all others similarly situated v. CareSouth Carolina, Inc.,* Case No. 2021CP1600887, and filed on or about November 9, 2021 in the Court of Common Pleas for the Fourth Judicial District, Darlington County, State of South Carolina.

Under Section 330 of the Public Health Service Act (codified at 42 U.S.C. § 254b *et seq.*), CareSouth is a community health center recipient of federal grant funds. At all relevant times, the Secretary of the U.S. Department of Health and Human Services (HHS) deemed CareSouth and its officers, governing board members, employees, and (certain) contractors U.S. Public Health Service (PHS) employees a protected entity under 42 U.S.C. § 233(a). That protection is an

1

absolute immunity from *any* civil action or proceeding for a deemed individual or entity's performance of (or alleged failure to perform) medical or related functions within the scope of his, her, or its deemed federal employment. 42 U.S.C. § 233(a) *et seq*.

This action falls squarely within the statutory protection. According to the operative complaint, this civil action arises out of CareSouth's alleged failure to safeguard protected health information and other confidential information (referred to herein collectively as Protected Health Information or "PHI") related to the provision of health care services to its patients. As set forth in the complaint, CareSouth's alleged failures include allowing an unauthorized individual to access and steal PHI from a cloud-based Information Technology (IT) system operated and maintained by CareSouth's contracted partner, Netgain Technology, LLC. This action seeks damages as well as declaratory and injunctive relief. A copy of the summons and complaint are included in Exhibit A (State Court docket and complete set of pleadings to date, including summons and complaint).

## II.    JURISDICTION

1.    The Court has jurisdiction under 42 U.S.C. § 233(*l*)(2), a federal officer removal statute enacted specifically for the benefit of deemed PHS employees. Section 233(*l*)(2) provides a deemed individual or entity the right to a federal forum for determination as to the availability of a federal immunity defense. *Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x 113 (3d Cir. 2018) (recognizing this statutory purpose of § 233(*l*)(2)); *see also Booker v. United States*, Case No. 13–1099, 2015 WL 3884813 *7 (E.D. Pa. June 24, 2015) (recognizing "removal pursuant to § 233(*l*)(2) serves the same purpose as procedure contemplated by [28 U.S.C.] § 2679(d)(3)"]). The PHS Act imposes no time limit on Section 233(*l*)(2) removals. *Estate of Booker v. Greater Philadelphia Health Action*, 10 F.Supp.3d 656, 665-66 (E.D. Pa. 2014) ("The fact that § 233(*l*)(2)

was added to a statutory scheme in which suits against health centers were removable at any time before trial provides a basis to infer that Congress intended the same time frame to govern removals by the health centers themselves"); 42 U.S.C. § 233(c) (permits Attorney General to remove state actions on behalf of actual and deemed PHS employees "any time before trial").

2.      The Court also has jurisdiction under the general officer removal statute, 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) affords a right of removal to "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute permits removal even when the underlying federal question arises only as a defense to a state-law claim. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006) (noting federal officer removal statute operates as an exception to the "well-pleaded complaint" rule). The general officer removal statute protects important federal interests, and must be broadly construed in favor of a federal forum. *See Colorado v. Symes*, 286 U.S. 510, 517 (1932) ("It scarcely need be said that such measures [allowing for federal officer removal] are to be liberally construed to give full effect to the purposes for which they were enacted."), *Willingham v. Morgan*, 395 U.S. 402, 406–407 (1969) (finding § 1442's language "broad enough to cover all cases where federal officers can raise a colorable defense arising out of the duty to enforce federal law").

3.      Pursuant to 42 U.S.C. § 1442(a)(1), CareSouth is an officer, or a person acting under a federal officer. When broadly construed, as required, the phrase "any officer" in § 1442 can be read to include CareSouth as it is "deemed to be an employee of the Public Health Service" under a federal statute that not only affords CareSouth a federal immunity defense, but affords an additional removal right as well.

4.      In the alternative of finding that CareSouth is a qualifying federal officer under 42 U.S.C. § 1442, it nevertheless qualifies as a person acting under a federal officer. *Agyin v. Razmzan*, 986 F.3d 168, 177 (2d Cir. 2021) (holding that (a) individual deemed PHS employee's removal under 42 U.S.C. § 1442 was proper because, as an employee of a deemed health center entity, he was acting under a federal officer with respect to medical and related functions performed on behalf of the health center entity, and (b) deemed PHS employee enjoyed "the same legal immunity that is extended to employees of the Public Health Service")); *see also* H.R. Rep. 104-398, 10 reprinted in 1995 U.S.C.C.A.N. 767, 774 (indicating congressional intent that deemed PHS employees be "covered for malpractice claims under the [FTCA] in the same manner as are employees of the Public Health Service.").

5.      To invoke § 1442(a)(1), a defendant who is not a federal officer must demonstrate that (1) he or she or it is a "person" under the statute (2) who acted 'under color of federal office' and (3) has a "colorable federal defense." 42 U.S.C. § 1442(a)(1). As a nonprofit corporation, which operates a federal grant project on behalf of HHS, CareSouth qualifies as a person within the meaning of § 1442. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (finding that the "term 'person' includes corporate persons"). CareSouth "acted under" an office of HHS to "assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 149 (2007); 42 U.S.C. § 254(o) (the central office of the Health Resources and Services Administration administers Health Center grant program on behalf of the HHS Secretary). In particular, CareSouth is statutorily obligated to serve an area or population that the HHS Secretary designated "medically underserved." *Id*. at 254b(a)(1). CareSouth is therefore supporting the mission of the actual PHS by performing functions that would otherwise fall within PHS responsibilities.

6.      CareSouth's deemed federal status, which is irrevocable as to specified periods, affords "the same" immunity that an actual PHS employee enjoys under 42 U.S.C. § 233(a). 42 U.S.C. § 233(g)(1)(A) (making remedy against United States "exclusive of any other civil action or proceeding to the same extent as the remedy against the United States is exclusive pursuant to subsection (a)"), (F) (providing that deemed status is "final and binding" on the United States and all parties to litigation). For § 1442, CareSouth's federal defense is "colorable," to the say the least.

7.      The Court also has jurisdiction under 28 U.S.C. § 1331. This case raises a question of substantive federal law as a threshold matter—*i.e.*, whether the alleged acts or omissions in the state action resulted from or arose out of CareSouth's "performance of medical, surgical, dental or related functions" within the scope of its deemed PHS employment status and, in turn, whether the United States must be substituted as the only proper defendant. *See also Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 435 (1995) ("Because a case [...] raises a question of substantive federal law at the very outset, it clearly 'arises under' federal law, as that term is used in Art. III") (internal citations and quotations omitted); 28 U.S.C. § 1346(b)(1) (United States "district courts [...] have exclusive jurisdiction of civil actions on claims against the United States").

8.      Finally, as an additional basis, CareSouth seeks removal of this action under 28 U.S.C. § 1441(c) based upon the district court's original jurisdiction over Plaintiff's claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(a)(1), (d). CAFA grants district courts of the United States original jurisdiction over class actions in which: (1) any member of the putative class is a citizen of a state different from any defendant; (2) the members of the putative class are over 100 people; and (3) where the amount in controversy for the putative class exceeds $5 million. *Id.*

### III.    PARTIES

9.    Defendant CareSouth is a South Carolina-based nonprofit organization that receives federal funding under Section 330 of the PHS Act (42 U.S.C. § 254b) to operate a community-based health center project that provides primary and related health care services to medically underserved residents of various South Carolina counties, regardless of any individual's ability to pay for the services. *See* 42 U.S.C. § 254b(a), (b), (j), (k). CareSouth serves specific geographic areas that the HHS Secretary has designated as "medically underserved." *Id*. at 254b(a)(1).

10.    According to the Complaint: Plaintiff Summer Mixon ("Plaintiff") is a citizen and resident of Darlington County, State of South Carolina.

### IV. STATUTORY FRAMEWORK

#### A.  Federal Immunity under 42 U.S.C. § 233 *et seq.*

11.    Under the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, § 4, 84 Stat. 1868, 1870-71 (1970), codified at 42 U.S.C. § 233, PHS personnel are absolutely immunized from any civil action or proceeding arising out of their performance of medical, surgical, dental or related functions within the scope of their employment. 42 U.S.C. § 233(a). Section 233(a) extends absolute immunity to PHS personnel by making the remedy for damages against the United States under the FTCA the *exclusive* remedy for such actions. *Id*.

12.    To facilitate the legislative objective of ensuring medical services in underserved areas, 42 U.S.C. § 233(a) shields PHS personnel from personal liability arising out of their medical and related duties. Without such protection, reports suggest that the cost of professional liability insurance would greatly hinder or altogether preclude the provision of these services. *See* § 2, 84 Stat. 1868; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970)

(Rep. Staggers, the House of Representatives sponsor, stating that PHS physicians "cannot afford to take out the customary liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive."). To achieve it purpose, the grant of absolute immunity to PHS personnel under 42 U.S.C. § 233(a) is "broad" and "comprehensive." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (immunity is broad enough to "easily accommodate both known and unknown causes of action").

13.    The Federally Supported Health Centers Assistance Act of 1992 (and as amended in 1995) (the "FSHCAA"), 42 U.S.C. § 233(g) *et seq.*, authorizes the HHS Secretary to extend to certain federally-funded health centers and their officers, directors, and employees (and certain contractors) the same protection that § 233(a) affords to actual PHS employees. That protection grants "*absolute immunity* . . . for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui*, 559 U.S. at 806 (emphasis added).

14.    To qualify as a deemed entity for § 233(a) immunity, a health center grantee must submit an application with detailed information and supporting documentation sufficient for HHS to verify that the coverage should apply to *all* services provided by the health center to patients (and in limited circumstances, non-patients) of the center. The applicant is also required to demonstrate that the health center meets four requirements listed in § 233(h), including a requirement to "implement[] appropriate policies and procedures to reduce the risk of malpractice *and the risk of lawsuits arising out of any health or health-related functions performed by the entity*." 42 U.S.C. § 233(g)(1)(D) and (h) (emphasis added).

15.    The statute requires the HHS Secretary to make a deeming determination for health centers and their personnel within 30 days of receipt of such an application. *Id.* at 233(g)(1)(E).

The application seeks § 233(a) immunity in advance of and with respect to a specific prospective period (i.e., calendar year). A favorable deeming determination by the Secretary (which confers immunity) is "final and binding" (42 U.S.C. § 233(g)(1)(D)-(F)) on HHS, the Attorney General, and "other parties to *any* civil action or proceeding." 42 U.S.C. § 233(g)(1)(F) (emphasis added), with respect to the designated period.

16.     A negative determination (one denying a deeming application under 233(g) and (h)) is *not* final and binding. *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health and Human Servs.*, 396 F.3d 1265, 1271 (D.C. Cir. 2005) (recognizing statute's "final and binding" clause does not apply to a negative deeming determination).

17.     In the event of a negative deeming determination, the FSHCAA contemplates that the applicant would have a reasonable opportunity to pursue one or more of the following options: seek reconsideration of the Secretary's decision; submit a new application addressing the Secretary's stated basis for the prior denial; challenge the Secretary's decision under the APA; or, procure private malpractice insurance. *El Rio Santa Cruz*, 396 F.3d at 1272.

18.     By requiring a prompt and advance deeming determination, which constitutes a final and binding determination on all parties for a specified and prospective period, and conferring absolute immunity from any and all forms of civil malpractice suits for that period, the FSHCAA is designed to eliminate a federally-funded health center's need to purchase (expensive) private malpractice liability insurance for actions arising out of the performance of medical or related functions within the scope of their employment and in so doing allows centers to devote their federal grant funds to patient services (rather than insurance premiums). *See* H.R. Rep. 102-823, pt. 1, at 3 (1992).

19.    When a civil action or proceeding is brought against a deemed PHS employee, the entity or individual has a duty to deliver the pleadings to the grantor agency's designated representative, which is HHS's Office of General Counsel (OGC). HHS OGC is in turn required, to promptly deliver copies of the pleadings to the Attorney General and appropriate local U.S. Attorney. 42 U.S.C. § 233(b)

20.    Upon notification of a state court action against a deemed individual or entity (which is confirmed by a Notice of Deeming Action), the Attorney General has a mandatory (non-discretionary) duty to appear in that court within 15 days of notice of the lawsuit to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id*. at § 233(*l*)(1). The report to the state or local court of the HHS Secretary's deeming determination is also, as a matter of law, "deemed to satisfy" the Attorney General's scope of employment certification under 42 U.S.C. § 233(c) for purpose of removal to federal court. *Id*. at § 233(*l*)(1); *Cf*. 28 U.S.C. § 2679(d)(3).

21.    If, despite that mandatory duty, the Attorney General (or his or her authorized representative) fails to appear in the state court action and effectuate its removal to federal court within 15 days of notice of the state action, the deemed entity or individual has an absolute right to remove the matter to the appropriate federal district court, without any time limit for doing so. *Id*. at § 233(*l*)(2). Section 233(*l*)(2) is in substance and effect an officer removal statute, akin to (but even more generous than) the general officer removal statute at 28 U.S.C. § 1442(a)(1).

22.    Upon removal, all proceedings are stayed, by operation of law, until the federal district court conducts a "hearing" to determine the proper forum or procedure and issues an order

consistent with its determination. 42 U.S.C. § 233(*l*)(2)—"that is, to decide whether to remand the case or to substitute the United States as a party and deem the action as one brought under the FTCA." Campbell, 732 F. App'x at 117.

23.     The hearing in federal district court following § 233(*l*)(2) removal allows a deemed entity or individual to challenge the federal government's failure or refusal to "determine[] under subsections (g) and (h) of [§ 233], that such entity [or] employee … is deemed to be an employee of the [PHS] for purposes of [§ 233] with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id*. at § 233(*l*)(1). Where, as here, the claim is covered by the deemed defendant's § 233(a) immunity, § 233(*l*)(2) ensures that the United States is substituted as the only proper defendant in his or her (or its) place. *El Rio Santa Cruz*, 396 F.3d at 1272; *see also Booker*, 10 F.Supp.3d at 656.

## B. Federal Question

24.     As an additional basis, removal of this action is proper pursuant to 28 U.S.C. § 1331, because Plaintiff's allegations include a question arising under "[c]onstitution, laws, or treaties of the United States." *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint'"), *quoting Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983).

25.     Because the substance of Plaintiffs' action hinges on a contested question of federal law, it necessarily arises under federal law. Removal to this Court is thus proper pursuant to 28 U.S.C. §§ 1331 and 1441(a).

**C. Removal under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332**

26.    In addition to removal under the Federal Officer Statute, the Class Action Fairness Act of 2005, 28 U.S.C. § 1332, ("CAFA") provides another basis for removal of Plaintiff's complaint.

27.    CAFA was enacted "to facilitate adjudication of certain class actions in federal court," and must be read "broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S.Rep. No. 109-14, at 43 (2005)). While Defendant CareSouth disputes Plaintiff's claims in this matter, and reiterates that it is not the proper party defendant, nor that Plaintiff's claims have merit, the complaint itself meets each of CAFA's threshold requirements.

28.    Under CAFA, original jurisdiction exists within the district courts when a class comprises more than 100 members. *See* 28 U.S.C. § 1332(d)(5)(B). In addition to the threshold numerosity requirement, minimal diversity must exist for CAFA to confer original jurisdiction on the district court. Minimal diversity is satisfied when *any* plaintiff, or prospective class member is a citizen of a different state than *any* defendant. 28 U.S.C. § 1332(d)(2)(A). *See Mississippi ex rel. Hood v. AU Optronics, Corp.*, 571 U.S. 161, 165 (2014) (finding that CAFA replaces the ordinary requirement of complete diversity among all plaintiffs and defendants with a requirement of minimal diversity). Finally, CAFA confers jurisdiction on the district court when the amount in controversy, taking into account all purported categories of damages, exceeds $5 million.

## V.    FACTUAL AND LEGAL GROUNDS FOR REMOVAL

29.    CareSouth submitted deeming applications for itself and its personnel with respect to each year and all times relevant to this action. The HHS Secretary, under 42 U.S.C. § 233(g)

and (h), approved the applications and deemed CareSouth and its personnel for purposes of the protections afforded under § 233(a) *et seq*. Copies of the Notice of Deeming Action for the calendar years 2019, 2020, and 2021 are attached hereto as Exhibit B.

30.     On or about November 9, 2021, Plaintiff filed a civil action against CareSouth alleging that it failed to safeguard her PHI in connection with or related to health care services she received. *See* Ex. A, Compl.

31.     The complaint alleges, in essence, that: Plaintiff and members of the proposed class sought and obtained health care services from CareSouth; that, as a condition of receiving such services, Plaintiff and members of the proposed class had to furnish PHI to CareSouth; CareSouth allegedly failed to safeguard the protected PHI of Plaintiff and other similarly situated individuals; and, as a result, an unauthorized individual was able to infiltrate and steal their PHI from the cloud-based medical records system Netgain maintained and operated on behalf of CareSouth. Ex. A, Compl.

32.     On January 3, 2022, CareSouth's undersigned counsel advised Plaintiff's counsel, among other things, that: CareSouth is a deemed federal employee under 42 U.S.C. § 233 *et seq.* for purposes of a federal immunity; the immunity extends to this action; other patient-plaintiffs voluntarily dismissed similar actions against CareSouth or other deemed health centers arising out of the same exact underlying events. Undersigned counsel invited Plaintiff's counsel to voluntarily dismiss this case.

33.     In response, Plaintiff's counsel requested copies of the dismissals in the other similar cases and indicated that Plaintiff would consider the requested dismissal. During that period of consideration, out of an abundance of caution, undersigned counsel asked Plaintiff's counsel to consent to an extension of any applicable responsive pleading deadline for several

reasons: HHS would be making a coverage determination under 42 U.S.C. § 233 et seq.; CareSouth would be removing the action to federal court and asserting immunity in the event of the government failed to do so; and CareSouth had concerns with Plaintiff's purported service of process (explaining, for example, that the individual who apparently signed for a delivery of the summons and complaint was neither an officer or agent of CareSouth authorized to accept service of process on its behalf). *See* Ex. C (undersigned counsel's emailed to Plaintiff's counsel dated January 3, 6, and 9, 2022, without attachments).

34.    That same day undersigned counsel emailed Plaintiff's counsel with copies of the dismissals in other similar cases as well as a pleading detailing the basis of CareSouth's federal status and immunity. *Id*. Plaintiff's counsel did not respond to that email or two subsequent emails. *Id*.

35.    Instead, on January 6, 2022, Plaintiff filed a motion for entry of default in state court. Ex. A, Motion for Entry of Default dated January 6, 2022.

36.    On January 12, 2022, CareSouth delivered copies of the summons and complaint to HHS. Ex. D (Notice through U.S. Mail and HHS OGC's designated email address without enclosure). That same day, CareSouth provided courtesy copies of the summons and complaint to the U.S. Attorney for the District for the District of South Carolina, even though HHS, not CareSouth, is required to provide such notice. 42 U.S.C. § 233(b). Ex. E (Notice to U.S. Attorney for the District of South Carolina via U.S. mail and email without enclosure).

37.    On January 20, 2022, a representative of the Attorney General filed a notice in the underlying state court action, indicating that "the decision whether the United States of America will intervene is under consideration." Although the notice cites 42 U.S.C. § 233(*l*)(1), it did not advise the state court as to whether the Secretary had made favorable deeming determinations

under 42 U.S.C. § 233(g) and (h) with respect to the periods in which the events giving rise to the action occurred, nor did it remove the action to federal court, as contemplated by 42 U.S.C. § 233(*l*)(1), to preserve the status quo pending a threshold immunity determination. Ex. F, United States Notice to State Court.

## A.  SCOPE OF FEDERAL IMMUNITY

38.     As previously stated, § 233(a) provides absolute immunity to deemed PHS employees "for damage for personal injury, including death, *resulting from the performance of medical*, surgical, dental, *or related functions*, […] while acting within the scope of his office or employment." 42 U.S.C. § 233(a), (g).

39.     The immunity provided under § 233(a) is not limited to medical malpractice, but encompasses liability arising out of "*related functions"—i.e.,* functions that are related to the performance of medical, surgical, or dental functions. 42 U.S.C. § 233(a); *see e.g., Z.B. ex rel. Next Friend v. Ammonoosuc Community Health Services, Inc.*, 2004 WL 1571988, *4 (D. Me. June 13, 2004) (phrase "related to" in regulation recognizes that § 233(a) immunity extends beyond the mere act of providing medical care); *see also Pinzon v. Mendocino Coast Clinics Inc.*, Case No. 14–cv–05504–JST, 2015 WL 4967257 at *1 (N.D. Ca. 2015 Aug. 20, 2015) (granting, over objection, motion by United States to substitute itself in place of deemed health center defendant in civil action asserting claims for, among other things, violation of "the Americans with Disabilities Act," "Civil Rights Act of 1964," and "Health Insurance Portability and Accountability Act of 1996").

40.     The claims against CareSouth resulted from its "performance of medical … or related functions" within the scope of its deemed federal employment. 42 U.S.C. §§ 233(a), 254(b). On its face, the complaint alleges various theories of professional malpractice or malfeasance

against CareSouth. In essence, the complaint alleges that CareSouth, with respect to Plaintiff Summer Mixon and its other similarly situated patients, breached its duty maintain the confidentiality of their respective PHI and, as a result, caused harms to Plaintiff and the proposed class member patients of CareSouth.

41.    Maintaining the confidentiality of a patient's health and confidential information is a "medical … or related function" within the meaning of 42 U.S.C. § 233(a). The statute that governs the health center program, and makes a health center eligible for deemed status in the first place, requires the center to have, among other things, "an ongoing quality improvement system that includes clinical services and management, and that maintains the confidentiality of patient records." 42 U.S.C. § 254b(b)(1)–(2), (k)(3)(C); *see also Kezer v. Penobscot Community Health Center*, 15-cv-225-JAW, 2019 BL 141566 at *6 (D. Me. Mar. 21, 2019) (breach of patient confidentiality claim against deemed PHS employees falls within the scope of § 233(a) immunity, and performance of administrative or operational duties, including the duties the maintain the confidentiality of patient PHI, can qualify as "related functions" within the meaning of § 233(a)); *Cf. Teresa T. v. Ragaglia*, 154 F. Supp. 2d 290, 300 (D. Conn. 2001) (finding that doctor's duty to report suspected child abuse is a "related function to the doctor's performance of medical services."); *Brignac v. United States*, 239 F.Supp.3d 1367 (N.D. Ga. 2017) (recognizing that allegations of failing to report misconduct and failing to hire and retain is conduct covered under the FSCHAA); *La Casa de Buena Salud v. United States*, 2008 WL 2323495, **18-20 (D.N.M. March 21, 2008) (recognizing that FSHCAA coverage under § 233(a) may extend to claims of negligent hiring, retention, and supervision).

42.    The maintenance of confidential patient records and information is not only a medical or related function within the scope of CareSouth health center project/deemed PHS

employment, but this action, to the extent it seeks relief from CareSouth (as opposed to Netgain), is rooted in allegations that it failed to adequately perform such functions. In other words, with respect to CareSouth, the complaint acknowledges, if not hinges on, the inextricable connection between the provision of health care services and the duty to maintain the confidentiality of patient information. Ex. A, Compl. at ¶ 30 ("As a *condition of receiving treatment*, Plaintiffs and members of the classes were required by [the defendant health care providers] . . . to confide sensitive and confidential PHI . . . *related to* the care sought") (emphasis added).

43.     Plaintiff's exclusive remedy with respect to the alleged acts or omissions of CareSouth is a claim against the United States under the FTCA. *See* 42 U.S.C. § 233(a) (remedy against United States provided by FTCA "shall be exclusive of any other civil action or proceeding.").

## B.  FEDERAL QUESTION JURISDICTION

44.     Plaintiff's complaint presents questions of federal law—i.e., whether CareSouth violated the Federal Trade Commission Act (Ex. A., Compl. ¶¶ 45, 58) and that Defendant failed to employ reasonable and appropriate measures to protect against unauthorized access to patient Protected Health Information constituted an unfair act or practice prohibited by the Federal Trade Commission Act (*id*.).

45.     Pursuant to a plain reading of Plaintiff's complaint, Plaintiff has alleged that CareSouth violated federal law. Thus, Plaintiffs' cause of action for negligence cannot be resolved without determining substantial questions of federal law, including whether the FTC Act creates a private right of action, whether Plaintiff and the putative class are within the class of persons the FTC Act was designed to protect, and whether and to what extent, if at all, Defendants' conduct implicates the protections of the FTC Act.

46.    Even where a complaint arguably sets forth only state law causes of action, a case may nevertheless arise under federal law where the "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983). In this case, in addition to Plaintiff's cause of action for negligence, Plaintiff's theory of the case requires interpretation of the FTC Act.

47.    Because the substance of Plaintiff's action hinges on a contested question of federal law, it necessarily arises under federal law. Removal to this Court is thus proper pursuant to 28 U.S.C. §§ 1331 and 1441(a).

## C.  JURISDICTION UNDER CAFA

48.    As stated, CareSouth also seeks removal of this action under CAFA. CAFA grants district courts of the United States original jurisdiction over class actions in which: (1) any member of a putative class is a citizen of a state different from any defendant; (2) the members of the putative class are over 100 people; and (3) where the amount in controversy for the putative class exceeds $5 million. 28 U.S.C. §§ 1332(a)(1), (d).

49.    In the instant matter, the proposed class satisfies CAFA's numerosity requirement, which provides that, for removal to be proper, a class must be composed of more than 100 members. *See* 28 U.S.C. § 1332(d)(5)(B). Plaintiff has plead a class of "geographically dispersed" members, and estimates the potential class members to be in the "thousands." (Ex. A., Compl. ¶ 57). Accordingly, the putative class patently exceeds 100 members.

50.    In addition, to the threshold numerosity requirement, this case meets the requirement of minimal diversity.  Plaintiff, is a citizen of South Carolina. (Ex. A, Compl. ¶ 9) and seeks to bring a class action on behalf of herself and on behalf of all others similarly situated (Ex.

A., Compl. ¶ 109). (Ex. A., Compl. ¶¶ 20, 21, 22, 23). Defendant CareSouth is organized and does business in the State of South Carolina. Recognizing that CareSouth's patients may reside in other states, the complaint alleges that the putative class members are "geographically dispersed." (Ex. A., Compl. ¶ 57). Accordingly, minimal diversity exists between the putative class members and CareSouth.

51.    Notwithstanding Plaintiff's failure to allege the total amount of monetary relief she and the putative class seek, CAFA authorizes the removal of class actions in which the amount Jurisdiction before this Court is also proper because the purported amount in controversy for all potential class members exceeds $5 million. *See* 28 U.S.C. § 1332(d)(6) ("To determine whether the matter in controversy" exceeds $5,000,000, "the claims of the individual class members shall be aggregated.")

52.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee*, 135 S. Ct. at 554.

53.    CareSouth denies Plaintiff's claims of wrongdoing, denies the allegations in the complaint, and denies that Plaintiff can meet the requirements for class certification. As pled, however, the total amount of compensatory, exemplary, punitive, and statutory damages, restitution, attorney's fees, injunctive relief, and other monetary relief at issue in this action, on an aggregate, class wide basis, it is plausible that the monetary relief at issue would exceed CAFA's $5 million jurisdictional minimum. *Id.*

54.    No exceptions to CAFA jurisdiction apply in this case, whether mandatory or discretionary. *See* 28 U.S.C. § 1332(d)(3)-(4). In addition, CAFA jurisdiction is to be interpreted broadly, and in favor of removal. Because no exception to jurisdiction exists in this matter, and

because each of the threshold jurisdictional requirements are met, the district court has original jurisdiction over Plaintiff's claims.

## VI.     TIMING AND VENUE

55.     Venue before this court is proper because this Notice of Removal is filed in the federal district court that embraces the place where the local circuit court matter is pending. *See* 42 U.S.C. § 233(*l*)(2); 28 U.S.C. §§ 1441(a), 121(3).

56.     Under 42 U.S.C. § 233(*l*)(2), removal is timely as no trial has occurred in state court and there is otherwise no time limit. 42 U.S.C. § 233(c), (*l*)(2).

57.     Under 28 U.S.C. § 1446(b)(1), removal is timely as CareSouth has yet to be served with the summons and complaint in accordance with South Carolina law.

58.     A copy of this Notice of Removal is being contemporaneously filed with the state court where the underlying action was commenced.

## VII.     CONCLUSION

For the forgoing reasons, the Court should, after staying all proceedings and conducting a hearing pursuant to 42 U.S.C. § 233(*l*)(2), substitute the United States as the only proper defendant in place of CareSouth in the above-captioned action.

Dated: January 28, 2022                    Respectfully submitted,

TURNER PADGET GRAHAM AND LANEY P.A.

*/s/ Arthur E. Justice*
Arthur E. Justice, (Federal Court ID #2261)
J. Rene' Josey, (Federal Court ID #1004)
1831 W. Evans Street
Suite 400
Florence, SC  29501
Tel: 843.656.4412
ajustice@turnerpadget.com
Tel: 843.656.4451
jjosey@turnerpadget.com

19

and

FELDESMAN TUCKER LEIFER FIDELL LLP

*/s/ Matthew S. Freedus*

Matthew S. Freedus*
1129 20th Street, N.W., 4th Floor
Washington, DC 20036
Tel: 202.466.8960
mfreedus@ftlf.com

*Attorneys for Defendant CareSouth Carolina, Inc.*

*A motion for *pro hac* admission will be filed promptly